**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 18-cv-01473-CMA

TODD E. REGAN,

      Plaintiff,

v.

ANDREW M. SAUL, Acting Commissioner of Social Security,[1]

      Defendant.

---

## ORDER AFFIRMING DENIAL OF SOCIAL SECURITY DISABILITY BENEFITS

---

This matter is before the Court on Plaintiff Todd E. Regan's ("Plaintiff") appeal of the Commissioner's decision denying his claim for child's insurance benefits under Title II of the Social Security Act. Exercising jurisdiction under 42 U.S.C. § 405(g), the Court affirms the decision of the Administrative Law Judge ("ALJ"). Additionally, the pending motions that Plaintiff, who is proceeding *pro se*, has filed are denied.

## I.    <u>BACKGROUND</u>

This appeal involves Plaintiff's 2015 application for child's insurance benefits ("CIB") under Title II of the Social Security Act. (Doc. # 34 Administrative Record ("AR") at 22, 493–501.) To obtain these benefits, an adult claimant—i.e., a claimant over the

---

[1] On June 4, 2019, Congress confirmed Andrew M. Saul as the Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for the former Acting Commissioner, Nancy A. Berryhill, as the defendant in this suit. No further action needs to be taken to continue this suit. *See* 42 U.S.C. § 405(g).

age of 18—must establish that he is currently under a disability that began before he became 22 years old. *See* 42 U.S.C. § 402(d)(1)(B). Plaintiff was born on August 26, 1964, and he was 13 years old on the alleged disability onset date of March 1, 1978. (AR at 25, 30.) Thus, the time period relevant to Plaintiff's appeal is from August 1982 (when Plaintiff turned 18) to August 1986 (when Plaintiff attained age 22). (*Id*. at 22.)[2]

Plaintiff alleged disability during the relevant time period due to post-traumatic symptom disorder, severe depression, dyslexia, major head traumas, paranoia, and anti-social personality disorder. (*Id*. at 554, 74.) In the Function Report-Adult, Plaintiff stated that he was "basically institutionalized since" he was 13 years old, and that he had an extensive juvenile and adult criminal record. (*Id*. at 554.) He was incarcerated for more than 25 years, which he said had "created deep psychological" problems. Between the ages of 18 and 22, Plaintiff testified that he was in and out of prison and was homeless when he was not incarcerated. (*Id*. at 76, 79.) Additionally, Plaintiff has a significant history of drug and alcohol abuse. *See* (*id*. at 79, 391, 766–74).

Plaintiff testified that he blames his mother for much of his past, indicating that she kicked him out of the house at age 13. (*Id*. at 74–75.) Plaintiff also reported that he does not like being around people. (*Id*. at 560.) Apart from part-time jobs that he was required to perform while incarcerated or on probation, Plaintiff has no real work history. (*Id*. at 80, 83–84, 1057.)

---

[2] In addition to the disability application at issue in this case, the record references two other applications. In 2001 Plaintiff filed an application for supplemental security income ("SSI"), which was denied. (AR at 384–97.) However, Plaintiff filed another application for SSI in 2013, which was granted. (*Id*. at 370.) Plaintiff continues to receive SSI benefits under Title XVI (*id*. at 23), and it is undisputed that his 2013 application is not at issue in this case, *see* (*id*. at 30, 99).

The record before the ALJ contained only a few treatment notes and medical records, all of which were dated more than ten years after the time period relevant to Plaintiff's CIB claim. *See* (*id*. at 1010, 1033–45—diagnosis of depression and treatment notes from 2000 and 2001; 1069–1101—treatment notes from 1998 through 1991; 1046–55, 1066–68—medical marijuana registries from 2009 through 2016). The record also contained two consultative psychological examinations. Dr. Robert Berland evaluated Plaintiff's mental health status in October 1987 in connection with his 1986 bank robbery charges. (*Id*. at 1029–32.) Additionally, Dr. Brad Marten examined Plaintiff in connection with his February 2013 application for Title XVI disability benefits. (*Id*. at 1056–65.) Both Drs. Berland and Marten found, *inter alia*, that Plaintiff had antisocial personality disorder with paranoid features. (*Id*. at 1031, 1063.)

In February 2017, Plaintiff and his attorney appeared at a hearing before ALJ Kathryn D. Burgchardt. (*Id*. at 90–103.) The ALJ explained that she would have to deny Plaintiff's claim for CIB benefits as the record contained no evidence from the relevant time frame. (*Id*. at 94–95, 99, 101.) She also told Plaintiff that the agency had repeatedly tried to get information relevant to Plaintiff's claim. (*Id*. at 93–94.) In response, Plaintiff told the ALJ that he had a "whole box of documents" that he had submitted. (*Id*. at 98, 101–02.) As they were not on the electronic file or in the record, the ALJ granted a continuance to allow Plaintiff and his attorney an opportunity to submit evidence relating to the time frame under review. (*Id*. at 96–97, 102–03.) The ALJ reiterated that she needed medical evidence between 1982 and 1986. (*Id*. at 101.)

In March 2017, Plaintiff and his attorney attended a second hearing before the ALJ. (*Id*. at 47–89.) The ALJ noted that Plaintiff's attorney had not provided any additional medical evidence, and that there was "no medical evidence at all during the period under review." (*Id*. at 49–50.) She further noted that Plaintiff had submitted a statement (Ex. 37-E), but indicated that "without any medical evidence, . . . the regulations" did not allow her to simply accept that information. (AR at 50, 59.)

Plaintiff's attorney informed the ALJ that he had filed a request under the Freedom of Information Act ("FOIA") that was still pending. (*Id*. at 51.) The ALJ responded that she did not know what he was waiting for, and that she could not wait any longer to adjudicate the case. Plaintiff's counsel stated he wanted to proceed, and he referenced the grant of Supplemental Security Income ("SSI") benefits to Plaintiff in 2013 to support his case. The ALJ stated that she could not "use evidence from 2013 . . . to reach back to a program when [Plaintiff] was 18." (*Id*. at 52.)

Plaintiff then told the ALJ that he had other evidence to support his claim, including a federal pre-sentence investigation report, juvenile records, reports from the Clearwater, Florida police department and the Pinellas County, Florida Sheriff's office, and school records. (*Id*. at 52–53, 62.) He also said that four juvenile court judges recommended mental health care between 1978 and 1984 as noted in the federal pre-sentence investigation report. (*Id*. at 58.) Although Plaintiff again stated that these documents were in his electronic file, the ALJ said she did not have them.

Plaintiff indicated to the ALJ that he had submitted a box of documents to the agency's hearing office which he later picked up. (*Id*. at 53–63.) At Plaintiff's request,

the ALJ granted another short continuance so that Plaintiff could go to his home to retrieve the box of documents and bring them to the ALJ for submission to the record. She explained again that the regulations require medical evidence that supports the claims, and that without such evidence, there was nothing she could do for Plaintiff. (*Id*. 59.) She also stated that she would not have time to go through a box with thousands of documents, to which Plaintiff responded that he would separate the documents that he thought were relevant. (*Id*. at 63.)

When the hearing reconvened four hours later, Plaintiff and his attorney gave the ALJ the documents that Plaintiff contended he had originally provided to the agency. (*Id*. at 67–68; 730–940.) The ALJ noted that Plaintiff had given her three documents, which had been put into the file as Exhibits 6F, 7F, and 10F, and that she had considered them. (*Id*. at 64–65.) The ALJ informed Plaintiff that she discovered what happened with his box, and that agency staff confirmed that Plaintiff had brought the documents in. (*Id*. at 66.) The staff went through the documents one by one and placed anything in the file that might be relevant to Plaintiff's disability claim. (*Id*.)

Plaintiff confirmed to the ALJ that between the documents that had been put into the file and the documents he provided to the ALJ, she now had all of the reports that existed from the relevant period. (*Id*. at 67–68, 77–78.) The ALJ stated that she would take her time and go through the information. The ALJ then heard testimony from Plaintiff and a vocational expert before closing the hearing. (*Id*. at 72–89.)

On April 27, 2017, the ALJ issued a decision denying Plaintiff's application for CIB. (*Id*. at 19–38.) The ALJ found at step one of the five-step sequential evaluation

process that prior to age 22, Plaintiff had severe impairments of personality disorder, drug/alcohol abuse, and psychotic affective disorder. (*Id*. at 25.) At step two, the ALJ found that Plaintiff's impairments or combination of impairments did not meet or medically equal the criteria of a listed impairment.

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"). She found that prior to age 22, Plaintiff had the RFC "to perform work that was unskilled with a specific vocational preparation ("SVP") of 1 or 2, not in close proximity to co-workers or supervisors, meaning the claimant could not function as a member of the team, and with minimal to no direct contact with the public." (*Id*. at 26.) At step four, the ALJ found that Plaintiff had no past relevant work. Considering Plaintiff's age, education, work experience, and RFC, the ALJ found at step five, with the assistance of a vocational expert, that there are jobs existing in significant numbers that Plaintiff can perform. (*Id*. at 30, 85–86.) Accordingly, the ALJ found that Plaintiff was not under a disability "at any time prior to August 25, 1986, the date he attained age 22." (*Id*. at 31.)

Subsequently, the Appeals Council declined Plaintiff's request for review. (*Id*. at 39–42.) Therefore, the ALJ's decision became the final decision of the Commissioner of Social Security. This appeal followed.

## II.    STANDARD OF REVIEW

Under certain circumstances, Title II of the Social Security Act provides benefits to an adult child of an individual who is entitled to old-age or disability insurance benefits or who dies a fully or currently insured person. 42 U.S.C. § 402(d)(1). A claimant over the age of 18 is entitled to CIB on the earnings record of an insured person if he (1)

applies for such benefits; (2) is the child of the insured person; (3) was dependent upon the insured person; (4) is not married; and (5) is under a disability which began before he reached 22 years of age. *Id.*; 20 C.F.R. § 404.350.

Plaintiff seeks CIB on the earning record of his father. (AR at 75.) To obtain the benefits, Plaintiff must demonstrate "that he had a disability before attaining age 22 and that this disability continued without interruption through the date of his application." *Miracle v. Barnhart*, 187 F. App'x 870, 871 n.1 (10th Cir. 2006).

The claimant bears the burden of proving he has a "disability," which the Act defines as the inability to work at substantially gainful levels by reason of a severe physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423. In determining whether a child was under a disability after age 18 but prior to age 22, the Commissioner relies on the five-step sequential evaluation used to determine disability in adults. *See Geist v. Astrue*, No. 09-cv-00614-REB, 2010 WL 3777335, at *2 (D. Colo. Sept. 20, 2010).

A court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a

scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

The court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2007). Evidence is not substantial if it is overwhelmed by other evidence or constitutes mere conclusion. *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Courts must use common sense in reviewing an ALJ's decision, and they "must not 'insist on technical perfection.'" *Jones v. Colvin*, 514 F. App'x 813, 823 (10th Cir. 2013) (citation omitted). The court may not reweigh the evidence nor substitute its judgment for the Commissioner's. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

### III.      ANALYSIS

**A.      2004 DECISION**

In 2001, Plaintiff filed an application for SSI benefits, which was denied in 2004. At the February 2017 hearing, Plaintiff's attorney made a request to reopen this decision. (AR at 95, 97.) However, at the March 2017 hearing, the ALJ denied that request based on the doctrine of res judicata. (*Id*. at 51.) On appeal, Plaintiff argues that the 2004 decision was not final or binding. He asserts that numerous errors and prejudicial actions were allegedly committed in connection with that decision.

Plaintiff's argument that the 2004 decision is not final is rejected. The Court does not have jurisdiction to review the Commissioner's refusal to reopen a claim for disability benefits or a determination that such claim is res judicata. *Brown v. Sullivan*, 912 F.2d

1194, 1196 (10th Cir. 1990). Moreover, Plaintiff has not set forth any grounds such as fraud that would allow him to reopen this claim. *See* 20 C.F.R. § 404.988.

The Commissioner also argues that the Court need not address the merits of the ALJ's 2017 decision based on the doctrine of res judicata. Since the SSA found in 2004 that Plaintiff was not disabled, the Commissioner asserts that Plaintiff cannot show that he had a disability that "continued without interruption" since August 1986. *Miracle*, 187 F. App'x at 871 n.1.

The Court also rejects the Commissioner's argument. ALJ did state in the decision that "from a legal viewpoint, it is problematic for the undersigned to find . . . these additional Disabled Adult Child benefits from age 18 ongoing to the present when a valid ALJ determination was issued clearly finding no disability from April 5, 2001 to June 25, 2004." (AR at 29). However, the ALJ addressed the evidence and made a decision on the merits. Thus, the Court will not apply res judicata to bar a review of the ALJ's decision. *See Washington v. Colvin*, No. 3:15CV489, 2016 WL 1089391, at *2 (N.D. Ohio March 21, 2016) (res judicata argument was improper post hoc rationalization that the court would not consider, as the ALJ had completed the five-step sequential evaluation and considered the evidence before her); *Hughes v. Colvin*, No. 14 C 1883, 2015 WL 2259833, at *12 (N.D. Ill. May 12, 2015) (res judicata argument rejected as the ALJ never applied res judicata to bar the evidence from a prior decision).

## B.     WHETHER THE ALJ'S DECISION IS BASED ON SUBSTANTIAL EVIDENCE

Plaintiff asserts that the ALJ's decision was not supported because she did not properly consider the record. He contends that the record shows that he was completely

disabled between the ages of 8 and 12, and that the ALJ thus erred in her decision denying him CIB benefits. The Court rejects this argument, finding that the ALJ's decision was supported by substantial evidence.

Although there was no medical evidence in the record during the applicable time period that supported Plaintiff's claim, the ALJ afforded Plaintiff "some benefit of the doubt based on medical evidence in the record subsequent to that period" (AR at 26–27); namely, a psychological evaluation in October 1987 from Dr. Berland that was issued shortly over a year after Plaintiff's 22nd birthday. (*Id*. at 1029–32.) The ALJ found sufficient evidence from that report to support moderate limitations in mental functioning at step three, which she incorporated into the RFC. (*Id*. at 25–26.)

Also affording Plaintiff the benefit of the doubt, the ALJ found based on Dr. Berland's psychological testing that Plaintiff had severe impairments of "personality disorder; drug/alcohol abuse; [and] psychotic affective disorder" prior to attaining age 22. (*Id*. at 25, 29.) She stated, however, that "in no way does the one-time examination [of Dr. Berland] support disabling-type symptomatology related to the mental health conditions in issue, especially as they would pertain to the claimant's functioning over a year earlier." (*Id*. at 29.) "Rather, Dr. Berland simply recommended the claimant be appropriately medicated should he be placed in the community." (*Id*.)

Although the ALJ credited Dr. Berland's diagnosis, she properly recognized that the existence of a condition, alone, does not equate to disability. *See Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988). The ALJ's finding that Dr. Bernal's report did not show that Plaintiff's mental health conditions were disabling is supported by substantial

evidence. Dr. Bernal did not indicate that Plaintiff's impairments were so severe as to him render him unable to perform any work. *See id*.; 20 C.F.R. §§ 404.1505(a).

The ALJ also considered the other medical evidence dated after Dr. Berland's 1987 report. The ALJ found that none of it related to the time period at issue, and she gave it no weight. (AR at 29, 30.) This included the 2013 psychological consultative examination by Dr. Marten that formed the basis for a finding of disability related to Plaintiff's 2013 application for SSI. (*Id*. at 30.) The ALJ stated that "[w]hile supportive of the claimant's ongoing disability since February 2013, Dr. Marten's examination/ assessment clearly can have no relevance to the claimant's mental health functioning for the period from August 1982 to August 1986, nearly 27 years prior." (*Id*.) The ALJ also considered medical evidence referenced in the June 2004 decision. (*Id*.)

The ALJ concluded that "even sympathizing with the claimant and affording him the benefit of the doubt", she could not "make a finding of disability without appropriate medical evidence for the actual period at issue." (*Id*. at 26.) This finding comports with the legal standard for Plaintiff's claim. *See* 20 C.F.R. § 404.350(a) (requiring that the claimant be under a disability which began before he reached 22 years of age); § 404.1521 (requiring that impairments be established by "objective medical evidence from an acceptable medical source").

The ALJ further considered the evidence submitted by Plaintiff that he contends showed that he was under a disability during the relevant period, noting that Plaintiff had made a voluminous submission of documents. (AR at 28.) The ALJ stated that she

considered the documents "in association with [Plaintiff's] current application (as well as his prior 2013 hearing)." (*Id*. at 27.)[2]

As to the "voluminous record related to [Plaintiff's] extensive criminal history as a juvenile and as an adult," the ALJ found that it was "reflective of ongoing criminal behavior/activity" but "is not medical evidence and clearly not sufficient evidence with which to establish disability." (*Id*. at 28.) With respect to police affidavits, the ALJ stated that although Plaintiff "asked the undersigned to draw her own conclusions with regard to the various police affidavits found in the record related to the claimant's legal troubles," she had to "rely on objective medical evidence in making findings with regard to disability." (*Id*.) Thus, the ALJ did look at Plaintiff's contacts with law enforcement officials and their affidavits, and made appropriate findings.

The ALJ further stated that she had "reviewed available Federal Bureau of Prisons records" that referenced "a period of incarceration in 1998-99." (*Id*. at 29.) Although she found that there is some reference to depression in the records, she stated that there was no indication of any specific mental health treatment or prescribed medications. (*Id*.) The ALJ also found that these records "substantiate improvement in the claimant's functioning when not using alcohol or drugs." (*Id*.) They also "generally show that the claimant is without disabilities and approved for general population\ housing and temporary work assignments, which would be contrary to a finding for disability if relevant to the period in question." (*Id*.)

---

[2] This evidence included Exhibits 6E, 7E, 11E at 5-8, 12E, 13E, 16E-18E, 20E-24-E, 27E, 28E, 30E-32E, 34E, 35E, and 37E. (*Id*.)

The Court finds no error with the ALJ's analysis and weighing of this evidence. The ALJ reasonably found that the evidence Plaintiff provided was not sufficient to establish disability, as it did not constitute "objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. Plaintiff has not shown any significantly probative evidence regarding his medical condition that the ALJ failed to consider, nor has he explained how her analysis of the evidence was inaccurate. Instead, he has made only conclusory arguments that his evidence supports his claim of disability. Such arguments are not developed with specificity or clarify and are thus insufficient to provide a basis of review. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) ("mere conclusory allegations" in plaintiff's brief "with no citations to the record or any legal authority for support" were not adequately briefed).

To summarize, the ALJ considered all of the evidence, gave Plaintiff the benefit of doubt in connection with his impairments, properly weighed the limited medical evidence before her, and gave sound reasons for her decision. The ALJ's decision is thus supported by substantial evidence.

C.      WHETHER THE ALJ COMMITTED LEGAL ERROR

Plaintiff asserts numerous legal and other errors, including that the ALJ is not qualified, was not prepared, and did not develop the record. Plaintiff contends, among other things, that he has suffered acts of "discrimination, dilution, dereliction of sworn duties, due process issues, disparity, inaccurate files, HIPPA-violations" and prejudice. (Doc. # 51 at 8.)

The Court first addresses Plaintiff's argument that due process was violated because the ALJ did not adequately develop the record. "Social security hearings are subject to procedural due process considerations." *Yount v. Barnhart*, 416 F.3d 1233, 1235 (10th Cir. 2005). This requires that the procedures be "fundamentally fair", with "an emphasis upon the informal rather than the formal." *Richardson v. Perales*, 402 U.S. 389, 400–01 (1971). As a social security hearing is "nonadversarial in nature", "the ALJ bears responsibility for ensuring that 'an adequate record is developed during the disability hearing consistent with the issues raised' in that hearing." *Grogan*, 399 F.3d at 1264 (citation omitted).

The ALJ in this case fully complied with due process and the duty to develop the record. The ALJ attempted to obtain Plaintiff's prior file on his 2001 disability claim, but the file was no longer in existence. (AR at 22–23.) The ALJ considered the medical evidence discussed in the June 2004 SSI decision, but found that it did not reference any medical evidence relevant to Plaintiff's current claim. (*Id.* at 30.) The ALJ informed Plaintiff that the agency had "tried over and over and over again to get information" relevant to his claim. (*Id.* at 93–94.) When Plaintiff referred to a brain injury he received when he was 20 years old at Ellis County Jail, the ALJ said that the Jail did not have any medical evidence, which shows the ALJ's efforts to retrieve information. (*Id.*)

Moreover, as noted above in Section I, *supra*, the ALJ gave Plaintiff two continuances to obtain records he said he had at home that substantiated his claims. When Plaintiff brought these documents to the hearing, he informed the ALJ that she had all of the reports that existed from the relevant period. (*Id.* at 67–68, 77–78—

"beyond belief, you have everything"). Thus, Plaintiff's argument that the file before the ALJ was not complete is both disingenuous and inaccurate. *See Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) ("Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record—indeed, to exhort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation.").

Plaintiff also asserts that the ALJ should not have ruled on his disability claim while he had pending FOIA requests with various agencies, including a school district and police and correctional departments. This argument is also rejected. Plaintiff does not show what specific information he was seeking that was relevant to his claim, or that those entities possessed medical records dating from the period at issue. He also did not provide this information to the ALJ, as she stated that she did not know what Plaintiff and his counsel were waiting for from the FOIA requests. (AR at 51.) The ALJ further stated that "[i]f there was information out there, we made every possible effort to try to locate it", that it sounds like Plaintiff and his counsel were unable to locate anything as well, and that documents that far back were generally destroyed. (*Id*.) The ALJ's reasons for declining to wait for the unspecified FOIA information were reasonable, particularly after she had given Plaintiff two continuances. Plaintiff has not shown any error in connection with this decision.

The Court notes that Plaintiff later submitted to the Appeals Council the responses he ultimately received on at least three of his FOIA requests, none of which included any medical evidence. (*Id*. at 104–130—evidence provided by the Sheriff of

Hillsborough County, Florida, much of which is illegible, 131–221—evidence from the Clearwater, Florida police department, and 222–35—a response to Plaintiff's FOIA request from the Pinellas County, Florida Circuit Court.) The Appeals Council found that this evidence would not have changed the decision, and Plaintiff has not shown anything to the contrary. *See Wilkins v. Sec'y, Dept. of Health and Human Servs.*, 953 F.2d 93, 96 (10th Cir. 1991) (new evidence submitted to the Appeals Council must be material, meaning that there "is a reasonable possibility that [it] would have changed the outcome"). The evidence is not material as it relates only to Plaintiff's contacts with law enforcement and arrests in Florida, not to Plaintiff's medical condition during the relevant period.

Ultimately, although an ALJ has a duty to develop the record in a Social Security case, it remains the claimant's burden to establish that he was disabled during the relevant period. *Dixon v. Heckler*, 811 F.2d 506, 510 (10th Cir. 1987); 20 C.F.R. § 416.912(a). This requires the claimant to furnish medical and other evidence of the existence of the disability. *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004). In the instant case, the ALJ reasonably found that the documents Plaintiff submitted (AR at 730–940) did not constitute such evidence. It was, therefore, Plaintiff who failed to meet his burden of establishing disability in this case.

Plaintiff also argues that the ALJ had a duty to call a licensed mental health professional to determine whether the evidence supported his complaints. He suggests that the ALJ erred in denying his request to have such a professional evaluate his box

of documents and issue a report. (*Id*. at 476–78.) Plaintiff asserts that because the ALJ failed to obtain a medical expert or a consultative exam, the entire process was corrupt.

Again, the Court rejects Plaintiff's arguments. The ALJ explained at the February 2017 hearing that there was no reason to have a medical expert review the record when there was no medical evidence for him or her to review. (*Id.* at 100–01.) The ALJ also explained that she would not exercise her discretion to order a consultative examination as "it's years outside the timeframe under review." (*Id.* at 101.) In fact, the relevant time frame ended in August 1986, more than 30 years before the hearing. The ALJ also noted that Plaintiff was receiving Title XVI benefits. (*Id.*) The ALJ reasonably exercised her discretion in declining to obtain a medical evaluation or retain a medical expert. *See, e.g.*, *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997) (an ALJ has broad latitude in determining whether to order consultative examinations). Plaintiff has not shown how a consultative examination when Plaintiff was in his 50's could establish whether he was under a disability between the ages of 18 and 22.

Plaintiff also argues that the ALJ denied his "affidavit request" (AR at 20) for the appearance of witness Craig Severa at the hearing. Plaintiff suggests that Mr. Severa, who conducted a six-month review of Plaintiff's box of documents, believed that Plaintiff has Asberger's Syndrome. The Commissioner asserts that Mr. Severa is not a medical source but an Advocacy Coordinator at The Arc Pikes Peak Region, a community center in Colorado Springs. *See* https://www.thearcppr.org/craig-severa/. Plaintiff has not shown how Mr. Severa's lay opinion about Plaintiff's condition in 2017 would have established that Plaintiff was disabled between 1982 and 1986. Accordingly, the ALJ

reasonably declined to further develop the record by calling him. *See Bernal*, 851 F.2d at 301 (an ALJ may reject opinion which is not supported by medical evidence).

Plaintiff also asserts that the ALJ did not obtain any information from his brother, Richard Regan, and did not give any weight to his brother's November 2015 statement despite the fact it was allegedly given great weight at an earlier hearing. In that statement, Plaintiff's brother opined that Plaintiff had been disabled since his childhood when their parents divorced. (AR at 582–84.) The ALJ considered the opinion of Plaintiff's brother as to when he believed Plaintiff first became "disabled," but explained that she could not give it any weight as there was no corresponding medical evidence to support the opinion as to the period from August 1982 to August 1986. (*Id*. at 27.) The ALJ reasonably discounted the lay opinion of Plaintiff's brother in light of the lack of any supporting medical evidence. *Bernal*, 851 F.2d at 301. She reasonably rejected the other third-party report of Brandon Race for the same reason. (AR at 27.) In short, the ALJ had no duty to contact Plaintiff's brother or Mr. Race for more information.

Plaintiff further contends that the ALJ erred in connection with her reliance on vocational expert testimony. Plaintiff asserts that the ALJ hired four different vocational experts and that three of those experts "agree that [he has] been disabled for years." (Doc. # 51 at 19.) The record does not reflect these facts. Although the Commissioner asserts that there was a vocational expert at each of the hearings before the ALJ, the record indicates that only the vocational expert at the second hearing offered any testimony. *See* (AR at 47–103). Plaintiff asserts that he will call that vocational expert at trial to ask her about corruption and discussions between her and the ALJ prior to the

hearing. (Doc. # 51 at 19.) Plaintiff has, however, made no credible argument about corruption or that the vocational expert and ALJ conferred prior to the hearing. Accordingly, these arguments are rejected as well.

Plaintiff also asserts that the ALJ should have considered that he had a 1987 head or brain injury. *See, e.g.*, (Doc. # 51 at 11–12 ("In 1987, the plaintiff literally died on the operating table . . . Why was plaintiff not put on disability 'then'?")). However, the relevant time frame was August 1982 through August 1986, and any disability that occurred in 1987 from Plaintiff's head injury would not support his CIB claim. Similarly, other events that Plaintiff refers to while he was incarcerated were not within the relevant time frame and thus are not relevant to Plaintiff's claim.

Plaintiff further argues in support of his disability claim that Florida state officials made findings that he was a "delinquent", "incorrigible", and "un-governable" child. Plaintiff does not show, however, that these findings support a finding of disability. They are not medical evidence, and do not establish any mental or physical impairment.

As to Plaintiff's other arguments, Plaintiff has not shown that the ALJ was unqualified or unprepared. In fact, the record demonstrates the opposite in that the ALJ issued a thorough and well-reasoned opinion. Any ineffectiveness on the part of Plaintiff's counsel is not relevant to this Court's analysis of whether the ALJ's decision is supported by substantial evidence and free of legal error. *Winick v. Colvin*, 674 F. App'x 816, 819 (10th Cir. 2017). Finally, Plaintiff's other arguments as to alleged procedural or other errors are rejected as conclusory and/or unsupported by the record or the law.

Because the ALJ supported her findings with substantial evidence and applied the correct legal standards, the decision denying CIB benefits is affirmed.

**D.     PLAINTIFF'S MOTIONS AND OTHER DOCUMENTS**

Plaintiff has filed a number of motions in this case along with various other documents. For the reasons explained below, Plaintiff's motions are denied. To the extent Plaintiff has made requests in other documents that are not characterized as pending motions in CM-ECF, those requests are also denied. Finally, as to Plaintiff's declarations and documents that are not motions, they are improper and have not been considered in connection with the appeal of the Commissioner's decision.

By Order dated October 22, 2018 (Doc. # 32), the Court indicated that "the various 'legal notifications,' 'legal declarations,' and like-designated papers in this case" that had been filed at that time would not be considered. (*Id*.) Plaintiff was advised that "[w]hatever evidence plaintiff has to present and whatever arguments he has to make" should be made in the briefs the parties were to file pursuant to the Joint Case Management Plan for Social Security Cases. (*Id*.) Plaintiff was thus on notice that declarations and similar documents were not the proper means to submit his arguments, and such documents (other than his Opening Brief and Reply Brief) have thus not been considered.

As Plaintiff's motions for summary judgment (Doc. ## 66, 88) reiterate arguments made in Plaintiff's briefs, they are denied. Moreover, the Local Rules of this Court state that summary judgment motions shall not be filed in social security appeals. D.C.COLO.LAPR 16.1(b).

Plaintiff has also filed other motions which relate to the social security appeal or the ALJ who denied Plaintiff's claim for CIB benefits. Specifically, Plaintiff filed a Motion for Full Disclosure (Doc. # 65), a Motion to Clarify (Doc. # 85), and a Motion for Discovery (Doc. # 82), requesting disclosure of records relating to prior reversals of the ALJ who issued the decision in this case and other information. These motions are denied, as such records and information are irrelevant to the appeal of the ALJ's decision in this case. Plaintiff's request in the Motion to Clarify for tapes of the proceedings of the hearing is also denied, as Plaintiff has shown no valid need for the tapes or that they would somehow impact the Court's decision.

The Court further denies Plaintiff's Motion for Complete Procedural Review (Doc. # 70). This motion requests that the Court retain a certified mental health specialist to review records that Plaintiff claims the Social Security Administration is "holding hostage". (Doc. # 51 at 2.) Plaintiff has not identified what is in these records, or how they would support his claim. Moreover, as discussed previously, Plaintiff informed the ALJ that she had all the relevant records.

Plaintiff has filed two other Motions for Clarification (Doc. ## 68, 87), as well as a "Motion of Transparency" (Doc. # 86), related to his attorney Frederick Newall's performance before the Social Security Administration and other alleged errors. These motions are also denied. As noted in Section I, *supra,* ineffectiveness of counsel attorney is not a ground to reverse the ALJ's decision. Plaintiff has also not made any other arguments in those motions that impact his social security appeal or the Court's decision with respect to same.

The Court now turns to Plaintiff's Motions to Reconsider (Doc. ## 64, 71), relating to the Court's Order of February 4, 2019 (Doc. # 59). That Order denied Plaintiff's FOIA requests on the grounds they were premature, and that Plaintiff needed to exhaust administrative remedies. Plaintiff's motions assert that he has exhausted his remedies, and request that the Court enforce his FOIA requests. The Motions to Reconsider are also denied. As discussed previously, Plaintiff has not made a credible argument that any of the agencies he sent FOIA requests to possess medical records or evidence relevant to disability for purposes of the Act during the relevant time period.

Finally, Plaintiff's Motion to Appoint Pro Bono Counsel (Doc. # 61) is denied as moot. A previous motion to appoint counsel was granted by Order of September 6, 2018. (Doc. # 22.) The Court referred the case to the Civil Pro Bono Panel for possible assignment to a volunteer attorney, but no attorney accepted representation on Plaintiff's behalf. Plaintiff was informed that if counsel did not accept representation, he was responsible for the submission of briefs. Since the case has been fully briefed and is now decided on the merits, the motion for appointment of counsel is moot.

## IV.    CONCLUSION

Plaintiff has not identified any reversible error in connection with the ALJ's decision, and it is supported by substantial evidence. Plaintiff has also not identified any grounds for relief in his motions. Accordingly, the Court ORDERS as follows:

- the Commissioner's decision of April 27, 2017 denying child insurance benefits is AFFIRMED;

- Plaintiff's Motions for Summary Judgment (Doc. ## 66, 88) are DENIED;

- Plaintiff's Motion for Full Disclosure (Doc. # 65) is DENIED;

- Plaintiff's Motions to Clarify (Doc. ## 68, 85, 87) are DENIED;

- Plaintiff's Motion for Discovery (Doc. # 82) is DENIED;

- Plaintiff's Motion for Complete Procedural Review (Doc. # 70) is DENIED;

- Plaintiff's Motion of Transparency (Doc. # 86) is DENIED;

- Plaintiff's Motions for Reconsideration (Doc. # 64, 71) are DENIED;

- Plaintiff's Motion for Appointment of Counsel (Doc. # 61) is DENIED AS MOOT; and

- any other relief sought by Plaintiff is DENIED.


DATED: September 25, 2019

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge